ROSE PIACENTE, INDIVIDUALLY AND NEXT FRIEND OF MARY PIACENTE, PLAINTIFFS-APPELLANTS, v. NEW YORK CENTRAL RAILROAD COMPANY, A NEW YORK CORPORATION, DEFENDANT-RESPONDENT.

Submitted February 11, 1944—Decided April 13, 1944.

For the appellants, *Joseph H. Gaudielle* (*James A. Major,* of counsel).

For the respondent, *Wall, Haight, Carey & Hartpence* (*Edward J. O'Mara* and *Gerald F. O'Mara,* of counsel).

The opinion of the court was delivered by

RAFFERTY, J. This appeal is from a judgment entered against plaintiffs below by direction of the trial judge at the close of the entire case.

It was alleged in the complaint that on or about November 15th, 1939, Mary Piacente, a minor, having prepaid the required fare for her carriage between Weehawken and New York City, became and was a passenger aboard a certain ferry boat owned and operated by defendant, a common carrier. The ferry boat was equipped at both ends with gates extending across the width of the boat which, generally, were of the type commonly installed on ferry boats for the protection of passengers and vehicles. As the boat docked in the slip at New York City these gates were raised by an employee of defendant to permit passengers and vehicles to leave the boat and in this operation the index finger of the right hand of Mary Piacente caught in the gate, causing the injury complained of.

The infant plaintiff testified: "as the man was raising the gate to let the passengers off the boat, the gate started to come down. I put my hand up to stop the gate from falling on me," and in so doing her finger was caught and injured. On cross-examination this witness testified:

"*Q.* And as he raised the gate you walked forward, and as the gate was directly overhead * * * you noticed it was coming down on your head; is that right? *A.* Yes, as I was going forward. I was not directly underneath it. * * * *Q.* * * * How far away from it were you? *A.* I was about a foot, that is all. *Q.* How far away were you when the gate started to go up? *A.* About three feet. * * * *Q.* Where was the gateman standing? *A.* He was standing in the aisle, where the cars go out."

Anthony Piacente, a younger brother of the infant plaintiff, was a passenger with her on this occasion. His testimony

generally corroborated that of his sister. This witness testified:

"He [defendant's employee] was lifting up the gate. So when he lifts up the passageway for the people, the gate and vehicles also lifts up, and they didn't reach the post; they did not reach the post; and he walked away, and he was near the vehicle passage, and they started coming down again."

This witness observed that his sister reached up with her right arm to protect herself against the falling gate, and her finger caught in the gate and was thereby injured.

For the defendant, it was testified by William M. Devall that he was employed by defendant as a deckhand and that he was the person who raised the gates of the ferry boat on the occasion complained of. On direct examination he testified:

"Q. Will you tell the jury and tell the court what happened when you raised this gate? A. Well, I looked around to see everything was all clear, and I started to raise the gates; and I got them up where they belong, and this young lady had her finger caught in the gate, and I pulled them down quick, and ordered first aid.

Q. Did the gates go all the way up? A. They did.

Q. What is your practice when the gates reach the top; what do you do? A. When them gates get up there they put the chain around it, to keep them from falling.

Q. You put a chain around them to keep them from falling? A. Right.

Q. When the gates went up on this occasion did you do likewise? A. No; I pulled the gates down quick—I see that the young lady's finger was in there—to release it.

Q. Did you go over to put the chain up? A. After the girl's—I went over that way, yes.

Q. Was that when you noticed the girl's finger was caught in the gate? A. The girl's finger was in the gate."

He testified also that, prior to raising the gates, he called out a warning to the passengers: "Watch the gate," and that there was no descent of the gate "once it was raised."

Mr. Fortune, another witness for the defendant, testified that he was employed by defendant as ship carpenter, that

he had the duty of inspection of the gates of the several ferry boats operated by defendant, that he had regularly inspected the gates on the particular ferry boat just prior to the accident complained of and he had also made a regular inspection thereof on the following morning. On these inspections he found the gates "in perfect working order." This witness explained the construction and operation of the gates and stated that in the operation of raising the gate a counterbalance lifts it automatically as it passes the 45 degree angle, but that if the gate is stopped before it reaches this angle, "The gate will stay there. You can take your hand off it, and the gate will hang there. You raise it and leave it alone, the gate will stay. That is the way we fix them. * * * If you get a gate just so far, she will go a little over 45, then she will go herself."

There was testimony also, introduced by defendant, that Mary Piacente and her brother had made statements to representatives of defendant shortly after the occurrence, which were in substantial variance to the testimony given by them at the trial. These statements, although reduced to writing, were not signed by those witnesses and they denied having stated certain portions thereof attributed to them by defendant's representatives.

The trial court directed a verdict for defendant upon the conclusion that there was no satisfactory proof of negligence on the part of defendant. The court stated:

"The scintilla rule does not apply in this state. The testimony of negligence, at the very best, is highly speculative. A jury question is not presented, * * *."

The simple issue, therefore, is whether, from all of the testimony adduced, fair and reasonable persons might differ as to a conclusion of negligent conduct on the part of defendant or its employee. If so, then a jury question was presented and the direction of verdict was error. It seems clear that the issue must be decided in the affirmative. In summary, the testimony would indicate that Devall, following his duty, caused the gate to raise; that, contrary to his duty, he walked away from the gate post toward the vehicular passageway without making the gate secure with the chain provided

for the purpose, and that as a consequence thereof the gate fell, proximately causing the injuries complained of. A jury might reasonably conclude that this omission on the part of Devall to stand by and to fasten the gate satisfactorily evidenced a lack of due care on the part of defendant's employee and thus infer negligence chargeable to defendant company. There was much more presented than a mere scintilla of evidence. The credibility of the witnesses and the weight of the testimony was for the jury. *Fitzpatrick v. Merchants and Manufacturers, &c., Co.,* 122 *N. J. L.* 468, 472, *et seq.*

The judgment appealed from is reversed, to the end that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 15.